# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51870

MICHAEL BUDIG, TODD BRINKMEYER, JOHN STOCKTON, and PRIEST LAKE CABIN OWNERS' ASSOCIATION, INC., an Idaho non-profit corporation,

    Petitioners-Appellants,

v.

BONNER COUNTY BOARD OF COMMISSIONERS,

    Respondent,

and

TRICORE INVESTMENT, LLC,

    Intervenor-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2025 Term

Opinion filed: July 8, 2026

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barry McHugh, District Judge.

The district court's order dismissing the Petition for Judicial Review is <u>reversed</u> and the matter is <u>remanded</u> for further proceedings.

Givens Pursley, LLP, Boise, for Appellants. Preston N. Carter argued.

Featherston Law Firm, Chtd., Sandpoint, and Roberts Freebourn, PLLC, Spokane, Washington for Respondent Tricore Investment, LLC. Brent C. Featherston argued.

Bonner County Prosecutor's Office, Sandpoint, for Respondent Bonner County Board of Commissioners. William S. Wilson argued.

---

MOELLER, Justice.

This appeal asks us to determine whether applications for minor land divisions ("MLDs")[1] created under the Bonner County Revised Code ("B.C.R.C.") are subject to judicial review under Idaho's Local Land Use Planning Act ("LLUPA"). Idaho Code §§ 67-6501 to 67-6529. A group of neighboring landowners filed a petition for judicial review challenging the Bonner County Planning Commission's approval of separate MLD applications for two adjacent parcels on Priest Lake. They maintained that because the two MLDs were contiguous and each consisted of four lots under common ownership, they effectively created a de facto subdivision consisting of eight lots. The district court disagreed and dismissed their petition, finding that LLUPA did not authorize judicial review of the MLD applications because they did not qualify as a subdivision under either Idaho Code section 67-6521(1)(a)(i) or B.C.R.C section 12-650.

The neighboring landowners appealed. They argue that the MLD applications are subject to judicial review under section 67-6521(1)(a)(I) because they (1) fall under the "such other similar applications required or authorized" language of the statute and (2) substantively qualify as a "subdivision." For the reasons set forth below, we reverse the district court's decision and hold that the MLD applications in question were subject to judicial review under LLUPA. Accordingly, we remand this matter to the district court for further proceedings consistent with LLUPA.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Lay of the Land

Tricore Investment, LLC[2] ("Tricore"), is an Idaho limited liability company. In 2021, it acquired title to three tracts of land along the shoreline of Priest Lake. *See* Figure 1, *infra*. This appeal was brought by Michael Budig, Todd Brinkmeyer, John Stockton, and the Priest Lake Cabin Owners' Association, Inc. (collectively "Appellants"), all of whom own, or have members who own, real property on Priest Lake near the two MLDs proposed by Tricore.

---

[1] An MLD is defined under Bonner County ordinance as "[a]ny division of land into four (4) or fewer lots or parcels." B.C.R.C. § 12-611.

[2] The case caption in the appellate record identifies the Intervenor/Respondent's name as "Tricore Investment, LLC"; however, throughout the record below it is almost always referred to as "Tricore Investment**s**, LLC," with an "s" added. We also note that in a recent case concerning this same party, it was also referred to in the plural. *See Tricore Investments, LLC v. Est. of Warren ex rel. Warren*, 168 Idaho 596, 485 P.3d 92 (2021). To avoid adding further to the confusion, we will simply refer to this party as "Tricore."



**Figure 1: The Original Three Tracts as of July 29, 2021**

Shortly after obtaining title, Tricore recorded a plethora of documents with Bonner County to split the three tracts into 35 lots. *See* Figure 2, *infra*. On August 3, 2021, Tricore filed 54 quitclaim deeds, transferring the properties to and from itself, ultimately carving out a total of 26 lakefront lots along the northern boundary of all three tracts and leaving nine larger parcels to the south. Because these 26 lots were created through a successive chain of quitclaim deeds, they did not require approval under Bonner County's planning and zoning process nor were they subject to judicial review under LLUPA. While the 26 lakefront lots are not at issue in this appeal, they have been challenged in a separate declaratory judgment action, which has been stayed in the district court pending the outcome of this appeal. *See Carroll v. Bonner County*, Case No. CV09-23-0731 (Bonner Cnty. D. Ct, Idaho).



**Figure 2: Tricore's Proposed Development**

At issue here are the remaining nine lots to the south. On August 9, 2021, Tricore submitted applications to create two minor land divisions, designated as MLD 0143-21 and MLD 0144-21 (collectively the "MLD Applications" or "the Applications"), which consisted of eight of the nine[3] remaining lots in the southern portion of the original three tracts depicted in Figure 1, *supra*. These contested parcels, referred to as "SouthShore Estates" and "SouthShore Estates 2," are depicted in the lower half of the map in Figure 2, *supra*.

## B.  The Bonner County Application Review Process

Idaho Code section 50-1301 defines a "subdivision" as "[a] tract of land divided into five (5) or more lots, parcels, or sites for the purpose of sale or building development, whether immediate or future[.]" I.C. § 50-1301(18). It also provides that "[c]ities or counties may adopt their own definition of subdivision in lieu of this definition[.]" *Id.* Bonner County, under authority pursuant to Idaho Code sections 67-6513 and 50-1301, adopted several ordinances governing subdivision applications. The County has three types of land division applications: (1) Minor Land Divisions ("MLDs"), which are the "division of land into four (4) or fewer lots or parcels," (2) short plats, which are the "division of land into five (5) to ten (10) lots or parcels," and (3) subdivisions, which are the "division of land into eleven (11) or more lots or parcels . . . ." B.C.R.C. § 12-611. MLD and short plat applications receive an expedited review process compared to subdivisions. *See* B.C.R.C. § 12-650(A).

Bonner County staff initially reviewed applications MLD 0143-21 and MLD 0144-21, conditionally approving them on January 24, 2022. County staff recommended that the Board of County Commissioners ("BOCC") approve the final plat for MLD 0143-21 (SouthShore Estates) on June 14, 2022. The BOCC approved it on June 21, 2022, on its consent agenda without specific discussion. The same day, the BOCC Chairman approved the recommendation of the Bonner County Planning Department. This was the only written decision concerning the approval; it did not include findings of fact and conclusions of law.

The Appellants and other interested parties petitioned for reconsideration of MLD 0143-21. They asserted that the application and subsequent approval failed to meet several requirements under Idaho Code and Bonner County Code, including notice requirements and environmental standards, and circumvented subdivision requirements by filing for contiguous MLDs. On August

---

[3] Tricore's proposed development left a single parcel in the southeast corner of the property, which is designated as "unplatted." It is not at issue in this appeal.

16, 2022, the BOCC took up the request to reconsider its approval of application MLD 0143-21. After receiving comments from several of the Appellants at an open meeting, BOCC moved to an executive session. Following the executive session, the BOCC denied reconsideration.[4] The Appellants timely petitioned for judicial review.

Bonner County staff initially evaluated and recommended approval for both applications MLD 0143-21 and MLD 0144-21 at the same time, but MLD 0144-21 was delayed because of an issue with the filing. After the application was completed, County staff recommended that the BOCC approve application MLD 0144-21 (SouthShore Estates 2) on October 4, 2022. The Appellants and other concerned individuals submitted comments regarding the application, protesting what they described as a "blatant attempt to segment an eight-lot subdivision as two four-lot minor land divisions." During the October 11 meeting, several Appellants echoed these same concerns, while other neighboring landowners raised concerns about the negative impact of the land development on lake water quality, the Idaho Department of Fish and Game's Class 1 status of the wetlands, local bird habitat, and road quality. In response to the Appellants' specific concerns, Bonner County's attorney commented: "One of those people says it looks as though this developer was trying to avoid the subdivision requirements. It doesn't just look like it, they 100 percent were."

Notwithstanding the County's attorney's acknowledgment, he concluded that the Bonner County Code did not explicitly prohibit deliberate avoidance of county land planning regulations. The Chairman of the BOCC remarked that the application approval only created "invisible lines on the ground" and that there would be opportunity for public hearings when future development began. The BOCC then voted unanimously to approve application MLD 0144-21. Again, the record of this vote was the only written decision pertaining to the approval; it did not include findings of fact or conclusions of law.

The Appellants and others filed a petition to reconsider the approval of application MLD 0144-21 on October 21, 2022. When the BOCC did not hold a public hearing on the petition to reconsider, it was deemed denied by operation of law on December 15, 2022, pursuant to Idaho Code section 67-6535(2)(b). The Appellants timely petitioned for judicial review of the approval of MLD 0144-21 in district court. On November 30, 2023, the petition in MLD 0144-21 was consolidated with the earlier petition for review of MLD 0143-21.

---

[4] The record is unclear whether the motion to reconsider was decided in an executive session or afterwards.

**C. The District Court's Decision on Appellants' Consolidated Petition for Review**

Initially, the district court vacated the consolidated petitions and remanded both MLD approvals to the BOCC based on its conclusion that the procedural requirements of Idaho Code section 67-6535—which require a written decision with a reasoned statement, findings of fact, and conclusions of law—had not been met. Bonner County and Tricore moved for reconsideration, arguing that the MLD Applications were not subject to judicial review under LLUPA because MLDs were not subject to LLUPA's procedural requirements. The district court agreed, granting the motion for reconsideration and vacating its prior decision.

Following briefing and oral argument, the district court ultimately concluded that it lacked jurisdiction to proceed on the consolidated petition for review because the MLD Applications were not subject to judicial review under LLUPA. The court first noted that, "[v]iewing the MLDs separately, neither MLD meets the definition of a subdivision under BCRC [section] 12-611 or the statutory definition contained in [Idaho Code section] 50-1301(18)." The court reasoned that because no ordinance in effect at the time of the Applications prohibited contiguous MLDs, it could not treat the separate applications as a single, consolidated application for an eight-unit subdivision. Therefore, taken separately, neither MLD Application was subject to the subdivision requirement under either Bonner County Code section 12-611 or Idaho Code section 50-1301(18). The court concluded that because LLUPA provides no statutory right to judicial review of MLD applications, it lacked authority to review them.

Next, the district court rejected the Appellants' argument that MLDs qualify as "similar applications" under Idaho Code section 67-6521(1)(a)(i). Under the district court's interpretation, "the applications referred to *must be required or authorized* pursuant to LLUPA – not merely similar to applications required or authorized by LLUPA." The court reasoned that section 67-6521(1)(a)(i) enumerates subdivisions, variances, and special use permits as subject to judicial review, and elsewhere authorizes planned unit developments ("PUDs") and building permits. Thus, the district court concluded that, based on the text of section 67-6521, *only* PUDs, building permits, and whatever other processes the legislature may add in the future, are subject to the requirements of LLUPA. After rejecting the remaining arguments brought by the Appellants, the district court concluded that it lacked subject matter jurisdiction and dismissed the case. The Appellants appealed the dismissal to this Court.

## II.  STANDARD OF REVIEW

Questions concerning a district court's subject matter jurisdiction are reviewed de novo as a question of law. *City of Ririe v. Gilgen*, 170 Idaho 619, 625, 515 P.3d 255, 261 (2022).

## III.  ANALYSIS

Ordinarily, in reviewing a county's decision on whether to grant a land use application, we would first look to LLUPA because it provides a statutory framework for land use decision-making by local governments in Idaho. I.C. §§ 67-6501 to 67-6529. However, the central controversy in this case is whether LLUPA applies to the type of land use applications at issue. In the proceedings below, the district court concluded it lacked jurisdiction because LLUPA did not apply to MLDs; therefore, it could not consider whether the Applications complied with LLUPA's procedural requirements. For the following reasons, we disagree and reverse the district court's order dismissing the Appellants' Petition for Judicial Review for lack of subject matter jurisdiction.

### A. Tricore's MLD Applications are subject to judicial review under Idaho Code section 67-6521(1)(a)(i) because they constitute "other similar applications" that are "authorized" under LLUPA.

The Appellants' primary argument on appeal is that the district court erred in its interpretation of Idaho Code section 67-6521, which allows for judicial review of decisions related to a municipality's "approval, denial or failure to act upon an application for a subdivision, variance, special use permit and *such other similar applications required or authorized pursuant to this chapter . . . .*" I.C. § 67-6521(1)(a)(i) (emphasis added). They assert that the emphasized language plainly acts as a residual clause that expands the purview of LLUPA beyond the types of applications specifically mentioned in the statute (i.e., "subdivision, variance, special use permit and such other similar applications required or authorized.").

On appeal, Tricore[5] urges this Court to adopt the district court's view and conclude that the phrase, "such other similar applications required or authorized pursuant to this chapter," only applies to those applications specifically set forth in LLUPA, namely "subdivision[s], variance[s], special use permit[s]," *see* I.C. § 67-6521(1)(a)(i), "planned unit developments," *see* I.C. § 67-6515, and "special or conditional use permits," *see* I.C. § 67-6512. The Appellants disagree,

---

[5] Although Bonner County is a separate party to this appeal, it expressly adopted all the arguments in Tricore's briefing. However, during oral argument, counsel for the County appeared to diverge from Tricore on several issues by asserting that it would take "a middle ground" approach. Nevertheless, not having preserved or expressed a unique position in the briefing of this matter, all references to Tricore's positions on appeal should be read to coincide with those of Bonner County.

asserting that the residual clause language plainly includes applications that are both similar to the other enumerated applications in that section and required or authorized under LLUPA.

"Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 582, 416 P.3d 951, 954 (2018) (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008)). This Court also construes statutory language so that "no part is rendered superfluous or insignificant." *JK Homes, LLC v. Brizzee*, 174 Idaho 307, 310, 554 P.3d 568, 571 (2024) (quoting *Friends of Farm to Mkt. v. Valley Cnty.*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002)).

For the following reasons, we hold that the residual clause in Idaho Code section 67-6521(1)(a)(i) permits judicial review of applications that are "similar" to applications for "subdivisions, variances, and special use permits" authorized or required under LLUPA. First, the plain meaning of the residual phrase, "such other similar applications," supports this interpretation. The word "such" means "[o]f this or that kind" and "[t]hat or those; having just been mentioned." *Such*, Black's Law Dictionary (12th ed. 2024). "Other" is defined, in pertinent part, as "being the one (as of two or more) remaining or not included." *Other*, Merriam-Webster, https://www.merriam-webster.com/dictionary/other (last visited July 2, 2026). Finally, "similar" means "having characteristics in common," "strictly comparable," or "alike in substance or essentials." *Similar*, Merriam-Webster, https://www.merriam-webster.com/dictionary/similar (last visited July 2, 2026). Read together, the phrase means "those remaining, comparable applications that are not included in the listed." As used in Idaho Code section 67-6521(1)(a)(i), this phrase immediately follows a non-exhaustive list of applications; therefore, by its plain meaning, it is a residual clause that includes any other applications that "hav[e] characteristics in common" with subdivisions, variances, and special use permits. Tricore's interpretation, which strictly limits "similar applications" to only those specific applications mentioned in LLUPA, renders the phrase "such other similar applications" superfluous because no comparison would be necessary if it only applied to the applications listed in the act. *See State v. Smalley*, 164 Idaho 780, 784, 435 P.3d 1100, 1104 (2019) (rejecting the interpretation of a statute that would render an adjective superfluous).

Next, we turn to the phrase, "required or authorized pursuant to this chapter," which imposes an additional requirement on the types of applications eligible for judicial review. The Appellants have conceded that MLD applications are not "required" under LLUPA. Therefore, the relevant question becomes whether the Applications at issue in this case were "authorized." The word authorize means "[t]o give legal authority; to empower." *Authorize*, Black's Law Dictionary (12th ed. 2024). This does not imply that an application must be expressly enumerated in LLUPA to fall within its authorization. Rather, an application is authorized by LLUPA if the county created that type of application pursuant to legal authority derived from LLUPA.

An MLD application, as defined by the Bonner County Code, resembles a subdivision application, and touches on the same policy considerations identified in Idaho Code section 67-6513. For example, section 67-6513 sets forth certain factors municipalities may address in subdivision ordinances: "mitigation of the effects of subdivision development on the ability of political subdivisions of the state, including school districts, to deliver services without compromising quality of service delivery to current residents or imposing substantial additional costs upon current residents to accommodate the proposed subdivision." I.C. § 67-6513. Additionally, section 67-6502 outlines the purposes of LLUPA, which aim "to promote the health, safety and general welfare of the people of the state of Idaho" by balancing protection of property rights with the facilitation of necessary development, safeguarding the local environment, and protecting life and property from hazards, among others. I.C. § 67-6502. Here, the MLD Applications demonstrate the overlap of policy concerns between MLDs and subdivisions. The Appellants identified these as including, but not limited to, the development location within the floodplain, protection of the wetlands on the property, increased traffic and noise to the area, and devaluation of the Appellants' properties. Tricore's objective in the MLD Applications was functionally identical to that of a subdivision applicant: to facilitate the development or sale of the land. Thus, although each of the MLD Applications at issue here fell just below the five-lot threshold imposed under Idaho Code section 50-1301(18), when taken together, the practical effect of the Applications mirrors that of a full-fledged subdivision.

Next, the procedural review under the Bonner County Code for MLDs closely mirrors the process set forth in Idaho Code section 67-6513 for subdivisions. *See* B.C.R.C. § 12-661. Specifically, the planning department is required to make findings regarding the application's compliance with applicable land use ordinances and regulations. B.C.R.C. § 12-661(A)–(B). The

9

BOCC then reviews the planning director's recommendation and determines whether to approve the application. B.C.R.C. § 12-661(D). This is materially similar to the statutory subdivision review process authorized by Idaho Code section 67-6519. Of course, Idaho Code section 67-6535 adds the additional requirement that decisions be supported by written findings, and section 67-6504 provides that final subdivision approval must come from the "governing board." In both instances, the applications trigger discretionary review processes that directly affect property rights and land development.

Finally, we must look to the substance of the specific MLD Applications Tricore submitted in this case. As noted, under Idaho Code section 50-1301(18), a subdivision is statutorily defined as the division of land into five or more lots. Separately, each Tricore Application seeks to create only four lots—one fewer than the statutory threshold for a subdivision. However, there are compelling reasons for reviewing both Applications together. First, they were submitted simultaneously by the same applicant. Second, the proposed MLDs concern contiguous property under common ownership. *See* Figure 2, *supra*. A practical reading of the Applications together leads to the unavoidable conclusion that, in substance, the two Applications operate in concert as a single effort to subdivide contiguous land into eight lots. Tricore has offered no reasonable alternative way to view the Applications.

Based on the record, we conclude that the filing of the two MLD Applications was an attempt to circumvent the requirements of Idaho Code section 50-1301(18). The County's attorney recognized as much at the second hearing, stating: "It doesn't just look like it, they 100 percent were" "trying to avoid the subdivision requirements." This is a critical concession considering our caselaw explaining that it is not permissible for one to "do indirectly what . . . is prevented by law from doing directly." *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 61, 305 P.3d 499, 505 (2013). In sum, although Tricore's individual MLD Applications fall just below the statutory threshold for a subdivision, taken together, the practical effect of these Applications mirrors that of a subdivision application. The MLD Applications closely resembled subdivision applications because they share the same applicant objectives, review processes, and policy considerations. Accordingly, we hold that Tricore's MLD Applications fall within the category of "other similar applications," as set forth in Idaho Code section 67-6521(1)(a)(i).

Turning to the second requirement of Idaho Code section 67-6521(1)(a)(i), that the application be "authorized pursuant to this chapter," we conclude that MLD applications are

10

authorized under LLUPA. Bonner County Ordinance 557 created MLD applications and states that they are "adopted pursuant to the authority granted at Chapter 65, Title 67, Idaho Code." As discussed above, because an authorized application is one that was created under legal authority provided in LLUPA—it need not be expressly listed in LLUPA. The ordinance explicitly tethered the provisions to the authority conferred by LLUPA; thus, we conclude that the MLD Applications were authorized pursuant to LLUPA for purposes of the residual clause.

Based on the foregoing, we further conclude that the residual provision in Idaho Code section 67-6521 clearly encompasses the two Tricore MLD Applications at issue here because (1) the MLD Applications sought to divide Tricore's property into five or more lots, rendering them similar to subdivisions and (2) the MLDs created under Bonner County Code 12-660 are authorized under LLUPA. Accordingly, we hold that the district court erred in concluding that Tricore's MLD Applications were not subject to judicial review under LLUPA.

**B. The Appellants, as the prevailing parties, are awarded costs under Idaho Appellate Rule 40.**

The Appellants request an award of costs on appeal under Idaho Appellate Rule 40. This rule provides for costs "as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40(a). Accordingly, as the prevailing parties in this appeal, Appellants are entitled to recover their costs.

## IV.    CONCLUSION

For the reasons set forth above, we reverse the district court's order dismissing the Petition for Judicial Review for lack of subject matter jurisdiction and remand for further proceedings consistent with this opinion. The Appellants are awarded their costs on appeal.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.